UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

UNITED STATES OF AMERICA,


               -against-                       **MEMORANDUM AND ORDER**
                                                 23-CR-00529 (OEM)
MODIBO WILLIAMS,


                   Defendant.


-----------------------------------------------------------x
Orelia E. Merchant, United States District Judge:

       Defendant Modibo Williams ("Williams") is scheduled to be sentenced based on his plea of guilty to felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *See* Transcript of June 17, 2024 Proceedings, ECF 30. In its sentencing memorandum, the Government argues that the Court should apply a cross-reference of attempted murder under the United States Sentencing Guidelines ("Guidelines") § 2A2.1 because Williams used the firearm in connection with an attempted murder. Government's Sentencing Memorandum ("Gov't's Sent'g Mem."), ECF 53, at 7-12.

       The Court has reviewed the parties' submissions and arguments. For the following reasons, the Court finds that the Government has failed to prove by a preponderance of the evidence that Williams had a specific intent to kill, which is required for the attempted murder cross-reference to apply. Therefore, the Court declines to apply the cross-reference and sustains Williams' objections to paragraphs five and nine of the Presentence Investigation Report ("PSR").

## BACKGROUND

       On September 21, 2023, Williams was employed at a construction site in Brooklyn, New York. PSR, ECF 43, ¶ 4. The defendant and the victim had been working on the basement level

of the worksite when the victim observed Williams improperly disposing of construction material, and the victim approached Williams. *Id.* When confronted, Williams became angry, left the worksite, and returned to the basement level with his left hand wrapped in a piece of yellow cloth. *Id.* According to the Government and the PSR, Williams approached the victim, stating that he was going to kill him. *Id.*[1] Williams objects to the allegation that he threatened to kill his coworker. Defendant's Objections to PSR ("Def.'s PSR Obj."), ECF 46, ¶ 4. Believing the item to be a knife, the victim took out his hammer to protect himself. PSR ¶ 4. Williams responded indicating he did not have a knife. *Id.* ¶ 5. The victim, realizing Williams had a firearm, ran away and attempted to hide behind a nearby column. *Id.* Williams chased after him. *Id.* The victim testified that Williams tried to shoot him, but the firearm did not fire. *Id.* Williams objects to the characterization that that "the defendant tried to shoot Victim-1, but the firearm did not fire" and asserts that "Mr. Williams did not try to shoot the victim." Def.'s PSR Obj. ¶ 5.

In its April 29, 2025 letter to the Court, the Government states that a "New Witness"—whom it had not previously interviewed—reported witnessing the confrontation between Williams and the victim. Government's April 29, 2025 Motion to Continue ("Gov't's Mot. Cont."), ECF 62, at 1. According to the Government, the witness "stated in sum and substance that he observed the defendant trying to shoot the victim," and that "he saw the defendant with the gun and heard it click two to three times." *Id.*

The PSR describes that the victim shouted to his coworkers to call the police and Williams attempted to flee. PSR ¶ 5. The victim then followed Williams to the street level of the work site and told coworkers to stop Williams. *Id.* The victim grabbed Williams and Williams turned around, pointing the firearm at the victim's chest. *Id.* The two struggled with the firearm and

---

[1] The PSR "reflects the information regarding the events of the case that was provided by the Government, including Victim-1's testimony." PSR Addendum ("PSR Add."), ECF 55, at 2.

Williams hit the victim with his head, who fell to the floor. *Id.* Williams again pointed the firearm at the victim. *Id.* The victim ran away again, shouting that Williams had a gun and was going to kill him. *Id.*

Other construction workers attempted to restrain Williams and were able to remove the firearm from his hand. *Id.* ¶ 6. The construction workers went to a New York City Police Department ("NYPD") Transit Station located across the street from the worksite for help. *Id.* Two NYPD officers responded and placed Williams under arrest. *Id.* The officers took custody of a 9mm Luger semiautomatic pistol, model CPX-2, and an extended magazine, which had separated from each other when the construction workers struggled to disarm Williams. *Id.* The extended magazine was recovered with 20 rounds of ammunition, and one additional bullet was found on the ground. PSR Add. ¶ 6; *see* Gov't's Sent'g Mem, Ex. A. No bullet was recovered from the firearm's chamber. *See* PSR Add. ¶ 6. The NYPD's Firearm Examination Analysis found that the "Pistol (1) and the utilized submitted ammunition . . . were found to be OPERABLE." Def.'s PSR Obj., Ex 2.

## PROCEDURAL HISTORY

The PSR applies a cross-reference for attempted murder, U.S.S.G. § 2A2.1(a)(2), upon a finding that the firearm was used in connection with the attempted commission of another offense, per U.S.S.G. §2X1.1(c)(1). PSR ¶¶ 9, 14. On January 12, 2025, Williams requested an extension of time to file objections to the PSR, indicating a potential *Fatico* hearing may be necessary to resolve the proposed cross-reference. Motion for Extension of Time to File PSR Objections, ECF 45. Williams filed objections to the PSR and a sentencing memorandum, arguing in both that Williams did not intend to murder the victim, that the Government will not be able to prove intent to kill by a preponderance of the evidence and therefore the cross-reference should not apply.

Def.'s PSR Obj. ¶ 9; Defendant's Initial Sentencing Memorandum ("Def.'s Initial Sent'g Mem."), ECF 49, at 1-3.

On March 12, 2025, the Court set a *Fatico* hearing for April 3, 2025, to determine whether the cross-reference should apply and rescheduled Williams' sentencing. S*ee* Docket Order dated March 12, 2025. On March 26, 2025, the Government moved to delay or cancel the hearing, arguing that the facts contained within the PSR "more than support that the defendant committed the cross-referenced crime of attempted murder by a preponderance of the evidence." Government's March 26, 2025 Motion to Continue, ECF 51, at 2. On March 27, 2025, the Government filed its sentencing memorandum, further arguing for the application of the cross-reference. *See* Gov't's Sent'g Mem. Williams was granted leave to reply to the Government's guideline arguments, Docket Order dated April 1, 2025, and Williams filed a second sentencing memorandum on April 3, 2025. *See* Defendant's Reply Sentencing Memorandum ("Def.'s Reply Sent'g Mem."), ECF 56. Having received the parties' additional briefings, the Court cancelled the oral argument and declined to hold a *Fatico* hearing. Docket Order dated April 8, 2025.

Less than a month later, however, the Government reversed course and requested a *Fatico* hearing so it could present testimony to the Court. Government's April 15, 2025 Letter, ECF 57, at 2. In particular, the Government stated its intent to introduce evidence through an expert from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), who would testify that it was more likely than not that Williams' firearm had malfunctioned during the incident. *Id.* The Court granted the Government's request and converted the sentencing scheduled for April 22, 2025 to a *Fatico* hearing. The Government then sought to adjourn that hearing by three weeks. ECF 59. The hearing was rescheduled for May 14, 2025, and Williams' sentencing was postponed until May 27, 2025.

4

On April 29, 2025, the Government once again changed course requesting the *Fatico* hearing be cancelled because, after further investigation, its evidence equally supports the defense's theory with respect to whether Williams chambered a bullet. *See* Gov't's Mot. Cont.

## DISCUSSION

For the attempted murder cross-reference to apply, the Government must prove the elements of attempted murder by a preponderance of the evidence. *See United States v. Stroman*, 420 Fed. App'x 100, 105 (2d Cir. 2012) ("the district court must have concluded, by a preponderance of the evidence, that [the defendant] actually attempted or intended to kill his victim."). In addition to taking a substantial step in the commission of the crime, attempted murder requires a specific intent to kill. *Braxton v. United States*, 500 U.S. 344, 351 (1991). Usually, intent to kill is proven by circumstantial evidence. *United States v. Kwong*, 14 F.3d 189, 194 (2d Cir. 1994); *United States v. Muyet*, 994 F. Supp. 501, 517 (S.D.N.Y. 1998).

There is insufficient evidence to show by a preponderance that Williams intended to kill the victim. The Government argues that Williams' actions—specifically bringing a gun to a populated worksite and threatening to kill the victim—are sufficient to demonstrate intent. Gov't's Sent'g Mem. at 9. In doing so, the Government states that these facts "show[] a heightened disregard for human life to meet the *mens rea* requirement" for attempted murder. *Id.* This suggestion, that a heightened disregard for human life is sufficient to prove attempted murder, is highly misleading. "Although a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill." *Braxton,* 500 U.S. at 351 n. * (citations omitted); *see also Gill v. I.N.S.,* 420 F.3d 82, 90-91 (2d Cir. 2005) (citing several New York State Appellate Division cases that each held that "one cannot attempt to commit second degree murder, *i.e.,* cause

someone's death by recklessly engaging in conduct which creates a grave risk of death to another person, under circumstances evincing a depraved indifference to human life" (citations omitted)).

The cases relied on by the Government to support Williams' intent are easily distinguishable from the present case. In each of those cited cases, the defendants fired their weapons. *See Stroman*, 498 F. App'x at 69 (affirming attempted murder cross-reference where surveillance video showed the defendant following two victims into a bodega and firing at them); *United States v. Velez*, 170 F. App'x 146, 147 (2d Cir. 2006) (affirming attempted murder conviction where defendant brought a gun, fired it at the victim, and later bragged about it); *United States v. Ashburn*, 11-CR-303 (NGG), 2015 WL 5098607, at *17 (E.D.N.Y. Aug. 31, 2015) (rejecting motion for acquittal on attempted murder conviction where evidence showed defendant shot the victim in the back at close range and noting that "shooting a firearm at close range generally evidences the intent to kill, not seriously injure"); *Muyet*, 994 F. Supp. at 518 (rejecting motion for acquittal where defendant, a hired killer, ambushed the victim and fired gun six times at the victim). The Government's proffered cases are also consistent with a body of caselaw in this Circuit finding that intent to kill can be inferred where a defendant fires a gun multiple times or at close range. *See, e.g.*, *United States v. Passley*, 22-1361, 2023 WL 8921150, at *2 (2d Cir. Dec. 27, 2023) (affirming a sentencing enhancement for first-degree attempted murder where the defendant, *inter alia*, "pulled up next to the [v]ictims' van, took out a handgun, and fired into the side of the van"), *cert. denied*, 145 S. Ct. 221 (2024); *United States v. Rodriguez*, 738 F. App'x 729, 730 (2d Cir. 2018) (summary order) (finding that video surveillance footage established the defendant acted with the "specific intent to kill the vehicle's occupant or occupants" "by bringing a firearm to the scene, waiting for a specific vehicle to approach from down the street, concealing his presence before firing four shots into the vehicle at close range" and "appearing calmly . . .

6

leav[ing] the scene of the shooting"); *United States v. Shipp*, 21-1284-CR, 2022 WL 16543193, at *2 (2d Cir. Oct. 31, 2022) (affirming district court's application of the cross-reference where the defendant "shot his victim at close range, chased him, stood over his collapsed body and pointed a gun at him as he begged for his life, and left the scene only after the gun jammed"); *United States v. Atehortva*, 69 F.3d 679, 687 (2d Cir. 1995) (finding that "[g]iven the undisputed evidence that [the defendant] repeatedly fired a gun at federal agents from close range," the district court properly determined at sentencing that the defendant's actions "constituted attempted murder"). Crucially in this case, it is undisputed that Williams' weapon did not fire at all. *See* PSR ¶¶ 4-8.

Before fully investigating its case, the Government presented extensive argument to the Court that a cross-reference of attempted murder should apply because "[b]ut for the gun's apparent malfunctioning, the defendant would have been successful." Gov't Sent'g Mem. at 11. The Government previously proffered two possible explanations for why the gun was found without a chambered bullet: "(1) the defendant brought a loaded gun, whose magazine and chambered bullet fell out during a protracted physical struggle to disarm the defendant; or (2) the defendant separately brought a gun, a spare bullet, and a magazine containing 20 bullets." Gov't Sent'g. Mem. at 11. As Williams pointed out, this reasoning omitted a third possible scenario: "Mr. Williams did not chamber a round and, during the struggle over the firearm, a bullet fell out of the detached magazine." Def.'s Reply Sent'g Mem. at 5. The Government nonetheless submitted it is "more likely than not that the gun was loaded, and that the chambered spare bullet and magazine fell out during the struggle to disarm the defendant" without offering anything to support that conclusion. Gov't Sent'g. Mem. at 11. But to establish by a preponderance means to prove, based on evidence, that something is more likely than not true. The Government,

submitting that the Court had all the facts before it to decide the issue, relied upon mere speculation and conclusion which could not suffice to meet its burden.

However, after consulting an ATF agent to investigate why the gun may have clicked multiple times, the Government agrees that one of three scenarios could have occurred: "the defendant (i) pulled the trigger on an unchambered gun two to three times; (ii) pulled the trigger, with the gun jamming and the defendant continuing to pull the trigger despite the gun jam; or even (iii) pulled the trigger, realized it was unchambered, and racked the gun to chamber a bullet." Gov't Mot. Cont. at 4. Thus, the Government concedes it "has no factual or expert testimony currently in its possession that would permit it to argue that any one of these scenarios more likely happened than the other scenarios and thus the government cannot dispute the issue of whether the gun had a bullet chambered."[2] Gov't Mot. Cont. at 5.

In other words, the Government cannot show by a preponderance of the evidence that Williams' weapon malfunctioned, and that he did not have the lesser intent to menace the victim. Nevertheless, the Government continues to press its claim that the facts of this case support an attempted murder cross-reference—a position that not only defies its concessions, but also for which it has failed to cite a single supporting case.

"Because the Court can equally infer that [Williams] intended to frighten or injure the victim, the record before the Court is insufficient to support the conclusion that [Williams] had specific intent to kill the victim." *United States v. Lucas*, 19-CR-467 (MKB), 2023 WL 4209628,

---

[2] Even if the Government did have such evidence, the cases it cited in support of its initial theory involve other corroborating circumstances supporting an intent to kill which are not present here. For example, in *United States v. Shipp*, intent to kill was shown by a preponderance of the evidence where the defendant "shot his victim at close range, chased him, stood over his collapsed body and pointed a gun at him as he begged for his life, and left the scene only after the gun jammed." 2022 WL 16543193, at *2. In *United States v. Urena*, two co-conspirators testified that the defendant pointed the gun at the unconscious victim's head, but the gun jammed. 73 F. Supp. 3d 291, 306 (S.D.N.Y. 2014). One of those witnesses specifically testified that the defendant chambered a bullet before the gun jammed and then proceeded to repeatedly hit the victim over the head with the jammed gun. *Id.*

at *4 (E.D.N.Y. June 26, 2023) (denying attempted murder cross-reference where, apart from the firing of "three shots in the general direction of the victim from approximately three car lengths away," there was no other evidence to support intent to kill); *see also United States v. Belmar*, 21-CR-16 (KMW), 2024 WL 2798860, at *5 (S.D.N.Y. May 31, 2024) (declining to apply attempted murder cross-reference where it was equally plausible that defendant intended to "injure, scare, or send a message" when he donned a mask and gloves, snuck up on his intended victims, and fired between six and seven shots directly at them).

Consistent with this finding, the Court sustains Williams' objection to paragraph five of the PSR, that "the defendant tried to shoot Victim-1, but the firearm did not fire," Def.'s PSR Obj. ¶ 5, and sustains Williams' objection to paragraph nine of the PSR, which applied the attempted murder cross-reference.

## CONCLUSION

For the foregoing reasons, the Court finds that the Government has not shown by a preponderance of the evidence that the cross-reference pursuant to U.S.S.G. § 2A2.1 should be applied to the facts of this case.  Accordingly, the Court declines to apply the attempted murder cross-reference in its calculation of Mr. Williams' sentencing.

SO ORDERED.

*/s/*
ORELIA E. MERCHANT
United States District Judge

May 12, 2025
Brooklyn, New York