IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal |
| | ) | No. 23-529 (OEM) |
| Government, | ) | |
| | ) | SENTENCING |
| vs. | ) | |
| | ) | Brooklyn, New York |
| MODIBO WILLIAMS, | ) | Date: May 20, 2025 |
| | ) | Time: 10:00 a.m. |
| Defendant. | ) | |

---

TRANSCRIPT OF SENTENCING
HELD BEFORE
THE HONORABLE JUDGE ORELIA E. MERCHANT
UNITED STATES DISTRICT JUDGE

---

A P P E A R A N C E S

For the Government: Amanda Shami, AUSA
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
718-254-7528

For the Defendant: Benjamin Yaster, Esq.
Federal Defenders Of New York, Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, New York 11201
718-330-1291

Also Present: Alexandria Lohwasser, US Probation

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

---

Court Reporter: Annette M. Montalvo, CSR, RDR, CRR
Official Court Reporter
United States Courthouse, Room N375
225 Cadman Plaza East
Brooklyn, New York 11201
718-804-2711

(Proceedings commenced at 10:19 a.m., in open court, to wit:)

THE COURT: Call the case.

THE COURTROOM DEPUTY: This is a criminal cause for sentencing, in the matter of *USA v. Williams*, Docket No. 23-CR-529.

Counsel, please state your appearances for the record.

MS. SHAMI: Amanda Shami for the government.

THE COURT: Good morning.

THE PROBATION OFFICER: Alexandria Lohwasser for Probation.

THE COURT: Good morning.

MR. YASTER: Federal Defenders by Benjamin Yaster on behalf of Modibo Williams, who is seated to my right.

THE COURT: Good morning.

THE DEFENDANT: Good morning.

THE COURT: So we are here today for the sentencing hearing of Modibo Williams. I would like to start by identifying the documents that I have in my possession, and note the defendant pled guilty before Magistrate Judge Peggy Kuo on June 1, 2024.

I have a presentence investigation report that was filed on December 30, 2025. Probation department -- a presentence investigation report.

I have the Probation Department's sentencing recommendation.

Defendant's objections to the presentence investigation report that were filed on January 5, 2025.

Defendant's sentencing memorandum, which was filed on January 24, 2025.

Four character references that were filed on behalf of defendant. And those are found at ECF 49-1.

I have the government's sentencing memorandum, which was filed on March 27, 2025.

Defendant's second supplemental sentencing memorandum filed on April 3, 2025.

I have a presentence investigation report addendum filed on April 3, 2025.

I have defendant's third supplemental sentencing memorandum filed on April 15, 2025.

Defendant's supplemental character letters filed on April 15, 2025.

Defendant's fourth supplemental sentencing memorandum filed on April 17, 2025.

And the second addendum to the presentence investigation report filed on April 21, 2025.

Is there anything else that the parties believe I should have before me at this time?

MS. SHAMI: Yes, Your Honor. Just, I believe you

have them, but just to put them on the record, there's the government's letters dated April 15 and April 17 and April 29, as well as the defendant's letter dated May 1.

THE COURT: I do have those as well.

MR. YASTER: That's everything on our end.

THE COURT: Okay, great.

Are you expecting any victims to make a statement?

MS. SHAMI: Not today, Your Honor.

THE COURT: Okay. And are we expecting an evidentiary hearing?

MS. SHAMI: No, Your Honor.

MR. YASTER: Not after the Court's ruling, no.

THE COURT: Okay. Mr. Yaster, have you and your client read and discussed the presentence report and the addendums?

MR. YASTER: Yes.

THE COURT: And have you and your client read and discussed the government's sentencing memorandum?

MR. YASTER: Yes.

THE COURT: So according to the presentence investigation report, the total offense level of 24, which is based on the guideline calculation set forth in the presentence report at paragraphs 14 and 23, and it applies the cross-reference for attempted murder, with criminal history points of 7; a criminal history category of IV; guideline

range of 77 to 96 months of imprisonment; a fine range of 20,000 to 200,000 dollars; a special assessment of 100 dollars, mandatory; forfeiture, the defendant consenting to forfeiture of one 9mm Luger semiautomatic pistol and twenty 9mm millimeter bullets; and supervised release range is one to two years.

Defendant objected to applying the attempted murder cross-reference, the government filed a response, and the defendant was permitted to reply. Relatedly, the defendant objected to paragraphs 5 and 9 of the presentence investigation report.

For reasons stated in the Court's memorandum and order that was issued on May 12, 2025, the Court declined to apply the attempted murder cross-reference and sustained the objections to paragraphs 5 and 9 of the presentence investigation report.

Defendant has filed factual objections to the presentence investigation report statement of the offense conduct and the employment record of the defendant, and also contests the application of the alternate baseline offense calculation in the absence of attempted murder cross-reference, which was submitted in the government's sentencing memorandum that was filed on March 27, 2025, and is incorporated in footnote 1 of the addendum to the presentence investigation report. And that's found at ECF 55.

I'd like to hear now from the parties with regard to any other items or issues with regard to the report that they'd like to be heard on at this time.

The government?

MS. SHAMI: Sure.

I mean, I think that with the Court having rejected the use of the attempted murder cross-reference, the government believes that the appropriate base offense level is 21, which is the base offense level found at Section 2K2.1(a)(3), plus the enhancement for the stolen gun, less 3 for acceptance of responsibility, and that is based on the fact that the defendant had sustained a previous federal conviction for a substance offense. The defense has objected to that application on the basis of two secondary cases that go into that analysis with respect to state court cases. There is no binding Circuit case or Supreme Court case as to the application.

And just as a policy and realistic argument to be made as to the particular guidelines, under the defendant's theory, there would be no state or federal prior controlled substance convictions that would be applied under that guidelines, which means that the defense's argument would basically read out that component of a prior criminal history of a controlled substance offense.

THE COURT: And what would that bring the guideline

range to then?

MS. SHAMI: So under the government's theory, the guidelines range would then be 57 to 71 months, with a criminal history category of IV, which is what the government and Probation --

THE COURT: No, I meant given with the circumstance you were stating, that is that the defense is arguing, that would then bring a guideline range of?

MS. SHAMI: You're asking what the government's or what the defense's is?

THE COURT: What the defense's is. The argument that -- you were explaining to me what it is that defendants were advancing and that that would knock out a category that is the controlled substance category. And my question is, if I were to do that, then what would the guideline offense level be?

MS. SHAMI: 46 to 57 months.

THE COURT: And that would be -- then the offense level would then be a base offense level of -- is that 19? Or 20? That is the base at --

MS. SHAMI: 19.

THE COURT: The base at 20?

MS. SHAMI: It is a base at 19 and criminal history category IV.

THE COURT: A total offense level of 19? Is that --

MS. SHAMI: 19. Yes.
THE COURT: Yes.
But the base offense level of 20, though? As opposed to 22; is that correct?
MS. SHAMI: Yes.
MR. YASTER: That's right.
THE COURT: Okay. I'll hear from defense.
MR. YASTER: Your Honor, we wrote somewhat extensively on this issue. We believe that this result is essentially compelled by the logic of the Second Circuit's decisions in *Townsend*, *Gibson*, *Minter*, and then -- I apologize if I mangle the pronunciation, *Chaires*, C-h-a-i-r-e-s.
The only basis that the government has offered for diverging from those opinions is, one, the policy argument that government counsel's just identified, and, two, an argument that an intervening Supreme Court case called *Brown against United States* requires this Court to treat Mr. Williams' prior federal conviction as a controlled substance offense.
Neither one provides this Court with a reason to diverge from the Second Circuit's opinions about what qualifies as a controlled substance offense. First, regarding the policy argument, that same policy argument was advanced in *Townsend*, *Gibson*, *Minter*, and *Chaires*. The only difference is that it was the government saying no state offense would

qualify as a controlled substance offense. Here, the only difference is that now it would also be, according to the government, no federal offense.

That policy argument did not persuade the Second Circuit in those four prior cases with regard to state sentences. There is no textual reason in the guideline why it would persuade the Second Circuit to reach a different result for prior federal convictions.

And then as to *Brown against United States*, that was an Armed Career Criminal Act case. The statutory language of ACCA is materially different than the controlled substance definition in the guidelines. And what we directed the Court to was the Fifth Circuit's recent case in *United States against Minor*, where the Fifth Circuit, whose controlled substance offense jurisprudence is basically identical to the Second Circuit's, held that *Brown against United States* does not control whether a prior conviction qualifies as a controlled substance offense under the guidelines. We believe the Fifth Circuit got this issue exactly right, and we predict that the Second Circuit will hold the same.

So we don't believe that the government's arguments to -- we don't believe that the government has given the Court a persuasive reason to diverge from the pretty clear command from the Second Circuit about how to interpret what qualifies as a controlled substance offense.

THE COURT: So I will note that in looking at this, that I found that under *United States v. Chaires*, C-h-a-i-r-e-s, when determining whether a prior substance satisfies the definition of a, quote, controlled substance, quote, under the guidelines, courts in the Second Circuit apply either the categorical or modified categorical approach. And that's in *Chaires* and also in *United States v. Townsend*.

Under both approaches, the elements of the prior offense is compared to the federal Controlled Substances Act at the time of sentencing. A prior offense only qualifies under Section 4B1.2(b) if it is categorical match, meaning that if the statute at the time of conviction criminalizes any conduct, and in this case substance, that it is not criminalized by the Controlled Substance Act as of the date of sentencing, and the prior conviction cannot serve as a predicate offense. Under *Chaires* and *Townsend*, quote, it does not matter if the defendant's conviction was, in fact, premised on a substance that was clearly prohibited by both the state and federal narcotics laws, such as heroin or cocaine, end quote. That's *Chaires* at 178.

The holdings in *Chaires* and *Townsend* analyze the impact that prior state convictions, not federal, may have on criminal defendant's guideline calculations. And that's been noted by counsel in their arguments. Nonetheless, Judge Sullivan's concurrence acknowledged the reasoning in *Townsend*

and *Chaires* may apply equally to prior federal offenses.

Judge Amon also addressed this issue in the sentencing of *United States v. Wackman*, 23-CR-143. In that case, Judge Amon found that under current precedent, the defendant's prior federal conviction in violation of 21 USC 841, for conspiracy to traffic marijuana, cocaine, and cocaine base, did not qualify as a predicate offense.

Likewise, in *United States v. Boomer* before Judge Vitaliano, the United States Attorney's Office took the opposite position it argues now, that is, in *Boomer* the government acknowledged that, quote, as the law stands now, the reason for applying this rule to state convictions would apply -- would equally apply to federal convictions. And, there, the government conceded that the defendant's prior 2006 narcotics conviction was not a predicate offense, and, indeed, this is not -- this is the necessary result under the current circuit law. Judge Vitaliano then did not apply the enhancement for a controlled substances offense.

I also note that the Supreme Court's holding in *Brown*, which has been noted by counsel, 602 U.S. 101 (2024), which addressed the Armed Career Criminal Act does not disturb the Second Circuit precedent in *Chaires* and *Townsend*, rather, the Court expressly noted in footnote 7 that the *Brown* effect on the guideline analysis was doubtful.

Here, Mr. Williams has a 2005 conviction for

possession with intent to distribute a substance containing cocaine base, in violation of 21 USC Section 841(a)(1) and (b)(1)(C).

Since his conviction, the federal government legalized a cocaine derivative known as ioflupane, and at 2015, had Mr. Williams been convicted for the exact same conduct under New York law as opposed to federal, his conviction could not support a higher base level offense.

Here, the federal statute under which Mr. Williams was convicted, 841(a)(1) and (b)(1)(C), in 2005 criminalized ioflupane. So defendant contends that the 2005 statute is broader than the current Controlled Substance Act, and I recognize that this may seem counterintuitive, however, I find that the implications of the *Chaires* and *Townsend* decisions, as discussed in Judge Sullivan's concurrence, I find them to be convincing. And, therefore, in the absence of controlling precedence stating otherwise, I am considering a form of judicial lenity, as well as the basic goal of the Sentencing Act, which is to achieve increased uniformity in sentencings, and I find that Mr. Williams' 2005 conviction is not a predicate controlled substance offense, and with that, then, I find that Mr. Williams' base level is 20 under the sentencing guidelines Section 2K2.1(a)(4), where the defendant possessed a semiautomatic firearm capable of accepting a large capacity magazine. And I will say parenthetically that the sentence

that I will impose today is the same that I would impose regardless of the guidelines calculation.

Therefore, consistent with my May 12, 2025 memorandum and order and my rulings here today with regard to the controlled substance offense, I am adopting in part the PSR and the addendums.

I find that the advisory guideline range is total offense level 19, criminal history points 7, criminal history category IV, guideline range of 46 to 57 months of imprisonment.

Fine range is 20,000 to 200,000 dollars.

A hundred dollar special assessment since there's only one count pled to here.

And supervised release range is from one to three years.

Are there any objections to those calculations based on the rulings that I've made?

MS. SHAMI: No, Your Honor.

MR. YASTER: No, Your Honor.

THE COURT: Turning to the sentencing factors, I have considered the relevant factors set out by Congress at 18 USC Section 3553(a), including the advisory guideline, to ensure that I impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing. These purposes include the need for the sentencing to reflect

the seriousness of the crime, to promote respect for the law, and to provide just punishment for the offense, to deter criminal conduct, to protect the public from future crime by the defendant, and to promote rehabilitation of the defendant.

In addition to the guidelines and policy statements, I must and have also considered all relevant 3553(a) factors to ensure that I impose a sentence that is not greater than necessary to comply with the purpose of sentencing.

Mr. Yaster, do you wish to argue about the application of the 3553(a) factors, request a variance, or otherwise make a sentencing recommendation with regard to Mr. Williams?

MR. YASTER: Yes, Your Honor.

I would like to make a sentencing recommendation that's consistent with the recommendation we made in our sentencing memorandum.

We believe that a below guideline sentence is sufficient, but not greater than necessary, in this case.

Turning to the 3553(a) factors, perhaps the factor that most justifies a guideline sentence here would be the first 3553(a) factor, which calls for a sentence that reflects the seriousness of the offense and affords just punishment.

What we would say about that factor is, first, as we noted in our sentencing memorandum, there have been analogous cases of firearm possession and firearm use by a person

previously convicted of a felony that were sentenced with terms of imprisonment that were less than 46 months. We gave five or six examples of similar conduct committed by people with similar criminal records as Mr. Williams who received sentences between 18 and 27 months.

Those cases are important, Your Honor, because what they show is that in the opinion of other federal judges in this district and in the Southern District, a sentence of less than 46 months, it can be sufficient to afford just punishment and to reflect the seriousness of the offense conduct.

What I would also ask the Court to consider is that Mr. Williams has been on very restrictive conditions of release since his arrest on December 27, 2023. He was on strict home incarceration for approximately eight to nine months, and then after that period, when he was given permission to leave his house to work, he was still on highly restrictive home detention.

We provided citations to a First Circuit case, as well as a case by Judge Thompson in the Middle District of Alabama, holding that the Court has discretion to consider the conditions of a defendant's pretrial release when determining what the appropriate sentence should be. And the Court may, we would ask the Court to do this, incorporate and give consideration to the restrictive conditions of pretrial release to mitigate the ultimate sentence that's imposed.

Put simply, the fact that Mr. Williams was on home incarceration for eight months and then home detention after is a form of punishment that the Court can consider and can credit in reducing Mr. Williams' sentence.

Turning to the second 3553(a) factor, specific deterrence, we would submit that a sentence of less than 46 months is going to be enough to specifically deter Mr. Williams from committing this kind of offense conduct again.

Mr. Williams, since December of 2023, has been compliant with the conditions of his release, except for marijuana use. That marijuana use ended as soon as Mr. Williams was granted leave to work.

Mr. Williams' conduct on pretrial release shows that he can follow the law and that when he is working and is supervised, he will follow the Court's orders.

His record on pretrial release, we submit, indicates that the full weight of a guideline sentence is not necessary to specifically deter him here. And what we would also stress is that there was an intervening change in Mr. Williams' life after his arrest in this case that I think changes the specific deterrence analysis. That intervening change was his mother's diagnosis with multiple myeloma, a very serious cancer.

Mr. Williams takes care of his mother. I know the

Court has read the character letters, including from Mr. Williams' mother about the role that he plays in her life. Given his mother's medical condition and the fact that she has relied on him to help her attend doctors' appointments and to take care of her medical needs, Mr. Williams is in a different place in his life than he was when he committed this offense. His family depends on him in a different way than they did in September of 2023. And Mr. Williams takes that very seriously, so much so that Mr. Williams is not going to violate the law again and jeopardize again his opportunity to be present with his mother and to assist her in taking care of her medical needs.

We recognize that some term of imprisonment is necessary in this case. I am not asking for a nonincarceration sentence. What I am asking instead is that the Court reduce the amount of time Mr. Williams has to serve based on his pretrial release performance and also based on his very significant intervening change in his life. That, by itself, is going to -- it's going to persuade him to follow the law so he can be present for his mother.

As far as the general deterrence goes, I would point back to the cases that we cited showing that a sentence of less than 46 months can be sufficient on facts like these with Mr. Williams' criminal history record. Those cases indicate that a sentence of less than 46 months is enough to convey to

the public that this kind of conduct won't be tolerated and will be punished.

And then the final factor, Your Honor, is rehabilitation. Mr. Williams stands to gain, I would say, practically nothing in terms of rehabilitative or corrective services while in custody. Mr. Williams has a high school diploma, he has certifications to do construction work, he has a commercial driver's license, he has a barber's license. He's very employable. Imprisonment isn't going to, in all likelihood, improve his employment prospects. Mr. Williams is lucky that he has a long-term employer, Anthony Tolerine, whose letter we submitted to the Court, who's ready to rehire him.

So I think that final factor, rehabilitation, cuts in our favor, and cuts against the need for imposing a guideline sentence.

And then just the last point I would leave the Court with is Mr. Williams is genuinely remorseful and regrets the rash actions he took in September of 2023 that brings him before the Court today. Mr. Williams was prepared to plead guilty very early in this case. The only reason he did not is because I wanted to file certain pretrial motions under the United States Supreme Court *Bruen* case.

Mr. Williams has been anxious to be sentenced. He recognizes that he has to serve a term of imprisonment for

what he did, and he understands and is ready to accept whatever sentence the Court imposes.

So, with that, Your Honor, we respectfully request that the Court impose a sentence of less than 46 months.

THE COURT: I will hear from the government.

MS. SHAMI: Yes, Your Honor.

The government believes that a guideline sentence within the range that Your Honor calculated of 46 to 57 months is appropriate here. While the government recognizes that the defendant has taken positive steps during his pretrial release, that time is not calculable in diminishing from what is an appropriate guideline sentence because he has been out in the public. And, more fundamentally, the defendant only took responsibility after he perjured himself in the grand jury, after he lied to police officers, after he tried to escape responsibility for what he did.

Not only that, when the US Marshals attempted to execute the arrest warrant, the defendant would not let them in. They had to take a battering ram to his door. And he only pleaded guilty after the government produced evidence of his DNA being 30 trillion times more likely on the gun than any unknown individual.

The defendant exhibited not just a rash behavior on September 23, 2023, instead what he did was he left his work after getting into a workplace dispute and getting a gun. It

was not that his gun was in his glove compartment and he was found with a gun on his person. It was that he brought the gun to his workplace, and he brought it with an extended magazine.

A gun could have committed additional carnage apart from if he had shot at his coworker. He could have shot at his coworker, he could have shot at -- and multiple coworkers tried to disarm him. The gun could have gone off during the ensuing chaos trying to disarm him. He brought a gun to his workplace, without thought of who it could harm. It was not just a rash decision, and it was not an isolated decision. The defendant, when he was sentenced in this court in 2005, the gun was because the defendant pulled a gun on NYPD.

The defendant is not someone who has learned from his lessons. In fact, the fact that he has done this again after being given a lower sentence in 2005 speaks to the fact that he didn't value Judge Weinstein's decision back then. The fact that he had a gun so easily accessible that he came back within two minutes and had the gun at his workplace demonstrated the defendant had a gun. And he had had a gun for an unknown period of time.

And, Your Honor, we would submit that multiple judges in this court do give guideline sentences. Judge Kuntz has, Judge Donnelly has, Judge Komitee has, Judge Gujarati. And those are the cases that the government cited in their

March 27 sentencing memo. And the government believes that a guideline sentence is sufficient but not overly punitive to provide the defendant with the necessary specific deterrence and the general deterrence that is necessary to indicate to the public that bringing a gun to work when you have a workplace argument is not only inappropriate, it will result in a significant sentence.

THE COURT: Thank you.

Would Mr. Williams like to be heard?

THE DEFENDANT: Yes. Very briefly, Your Honor.

I just wanted to apologize to the Court for even having to drag you guys through this ordeal. I know what I did was irresponsible. It was emotionally unstable. And I do apologize to the Court.

I think the biggest regret that I have in this whole situation is the fact that, again, my mother has a medical condition, and it has affected me very greatly. My mindset is a lot different, knowing that I will potentially be away from her and she has to fend for herself. And, once again, I just apologize to the courts.

Thank you.

THE COURT: We are going to take a five-minute recess.

THE COURTROOM DEPUTY: All rise.

(Recess taken.)

THE COURTROOM DEPUTY: All rise.

THE COURT: Please be seated.

We are back on the record.

In determining the appropriate sentence in this case, I have considered the 3553(a) factors.

Mr. Williams' charges or charge arises out of an incident at his workplace on September 21, 2023, and at the time he was employed at a construction site with other individuals in Brooklyn. The victim approached Mr. Williams to inform him that he should not be disposing of certain material. Mr. Williams became angry, confronted the victim, and this somehow escalated to the point where Mr. Williams decided to retrieve a high capacity firearm, and proceeded to repeatedly and violently threaten the victim.

Mr. Williams, your actions not only threatened the rights and safety of the victim, but the community at large, and resorting to intimidation or force, especially with a deadly weapon, cannot be condoned.

I understand that Mr. Williams has expressed some remorse. I do consider the government's position and advance that such remorse was articulated after such time as a period of denial. But I now sentence the person that is before me today, and I acknowledge the persons closest to Mr. Williams recognize in their letter submissions to me his feelings of pain and guilt and regret and belief that he's learned his

lesson.

The Court acknowledges that Mr. Williams is actively involved in the care of his mother, who was more recently diagnosed with blood cancer since his arrest in this case and that he takes his mother to treatments and provides her with financial assistance.

And as I indicated, the Court has read those letters from his mother and others. She has written that Mr. Williams is her designated health care proxy and his presence is crucial for her well-being in various aspects of his life.

I acknowledge that Mr. Williams shares a great relationship with his mother and maintains strong ties with many who continue to support him, despite his crime. I understand that Mr. Williams has had a challenging childhood, and his father is suffering from certain addictions and committing abuse towards him, and that he was -- and that Mr. Williams was incarcerated as a juvenile.

With all that said, the Court believes that imposing a custodial sentence promotes respect for the law, and Mr. Williams does not dispute that. This offense is a gravely serious one and that warrants punishment, that is, in that it involved gun violence, the potential, and I do have a concern with regard to that. And had the circumstances here unfolded differently, the conduct could have endangered a victim and bystanders. The judgment exercised that caused this situation

to escalate to where it did is concerning for the Court.

I do acknowledge Mr. Williams' positive performance on pretrial, that is, during his home confinement and home detention after his arrest in this case, he has maintained consistent lawful employment when not on strict home confinement.

Prior to the offense, Mr. Williams maintained consistent employment and went nine years without police contact.

The Court acknowledges that the absence of more recent criminal history may reflect some degree of stability or personal growth on Mr. Williams' part.

Sentencing you to incarceration is going to interrupt your life, and your mother will lose support and care, but I must weigh the factor or deterrence to you and the public and respect for the rule of law protecting others on the other side of potential violence.

I will say that there are a few things that do concern me, and as an individual that is well aware of the justice system, despite the time that lapsed, you remained capable on that day of some serious unlawful conduct.

And I want to say to you, Mr. Williams, I do believe that you are better than you have shown to be on your worst day. But you need to believe that and conduct yourself accordingly, for yourself and for your family.

I am hopeful that you will receive the resources and support that you need to continue a better path forward and that you be able to manage your emotions without resulting to violence.

With that said, I must also signal to you and others that actions, especially those that have the potential to endanger the safety of others, have serious consequences.

So in balancing all of the 3553(a) factors, I can conclude that a custodial sentence is appropriate. I, therefore, sentence the defendant to 38 months imprisonment, with the Bureau of Prisons to credit 40 days already served for this conduct in state custody, for a total remaining sentence of 36 months and 20 days of custody.

I find that this sentence is sufficient but not greater than necessary to comply with the purposes of sentencing. It reflects the seriousness of the crime, it punishes you for the crime you committed, promotes respect for the law, protects the public from future crimes by you, and serves both general and specific deterrence.

Mr. Modibo Williams, I hereby sentence you to 38 months in custody with the Bureau of Prisons, to credit 40 days already served for this conduct in state custody, for a total remaining sentence of 36 months and 20 days of custody.

I impose two years of supervised release.

I impose an order of forfeiture. Mr. Williams

agreed to the entry of a forfeiture of one 9mm Luger semiautomatic pistol bearing serial number 345043 and twenty 9mm Luger caliber bullets.

The Court has entered an order of forfeiture of this property. The Court will append the previously entered order of forfeiture to the judgment in this case.

I also impose the following special conditions of supervised release:

The defendant shall participate in an anger management program as approved by the United States Probation Office. The defendant shall contribute to the cost of services rendered via copayment or full payment, an amount to be determined by the United States Probation Office based upon the defendant's ability to pay and/or the availability of third party payment.

I am also imposing a search condition. The defendant shall submit his person, property, house, residence, vehicle, papers, or office to a search conducted by a United States Probation Officer. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that defendant has violated a condition of his supervision and that the areas to be searched contain

evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

The defendant shall not have contact with the victims in this case. This means that he shall not attempt to meet in person, communicate by letter, telephone, or through a third party without the knowledge and permission of the United States Probation Office.

I do not impose a fine, as I find that you are not capable of paying a fine.

I impose a 100 dollar special assessment, which is 100 dollars with a single count.

You can appeal your conviction if you believe your guilty plea was somehow unlawful or involuntary or if there is some other fundamental defect in the proceedings that was not waived by your guilty plea. You also have the right to appeal your sentence. Under some circumstances, a defendant also has the right to appeal his or her sentence. Any notice of appeal must be filed within 14 days of the filing of the entry of judgment or within 14 days of the filing of a notice of appeal by the government.

If requested, the Clerk will prepare and file a notice of appeal on your behalf. If you cannot afford to pay the cost of an appeal for an appellate counsel, you have the right to apply for leave to appeal *in forma pauperis*, which means you can apply to have the court waive the filing fee or

on appeal you may also apply for court-appointed counsel.

Are there any outstanding counts?

MS. SHAMI: No, Your Honor.

THE COURT: Okay. Counsel, do you wish to make a recommendation as to where the defendant should serve his sentence?

MR. YASTER: I do, Your Honor.

We would request that the judgment include a recommendation that Mr. Williams be designated as close as possible to New York City to facilitate family visitations, specifically to allow his mother to visit him.

THE COURT: Okay. And with regard to surrender, does counsel request a voluntary surrender?

MR. YASTER: Yes, Your Honor. We request that the Court schedule the voluntary surrender date to the site where BOP will designate Mr. Williams in 60, that's six zero, days from today.

MS. SHAMI: The government consents to this.

THE COURT: Okay. The Court will include that in its judgment.

Are there any other matters to resolve in this case?

MS. SHAMI: Nothing from the government, Your Honor.

MR. YASTER: Just one point of clarification, Your Honor.

For the search special condition, as I understand

it, the Court ordered that Mr. Williams' person, property, house, papers, and office can be searched, but not his electronic.

THE COURT: You are correct on that.

MR. YASTER: Okay. Very well.

With that, nothing further.

THE COURT: I've not established a basis for that so I am not including that.

MR. YASTER: You anticipated my objection that I will not be making.

No, nothing further for Mr. Williams.

Thank you.

THE COURT: Okay. Is there anything further?

MS. SHAMI: Yes. Just one item, Your Honor.

The self-surrender date, I just want to clarify that it's 60 days from today rather than 60 days from whenever BOP designates the defendant.

MR. YASTER: That's correct, Your Honor.

The reason we picked 60 days is that in my experience it takes the Bureau of Prisons about 30 to 45 days to make its designation decision. 60 days should be more than enough time for BOP to designate Mr. Williams, and then for Mr. Williams to make travel arrangements to get to that site.

THE COURT: With that clarification, is there anything further the government wishes to raise?

MS. SHAMI: Nothing further from the government.

THE COURT: Okay, then. With that, we stand adjourned.

Mr. Williams, I wish you well.

MS. SHAMI: Thank you.

THE DEFENDANT: Thank you.

MR. YASTER: Thank you, Your Honor.

(Proceedings concluded at 11:29 a.m.)

* * * * *

**REPORTER'S CERTIFICATE**

I, ANNETTE M. MONTALVO, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings.

Dated this 22nd day of July, 2025.

/s/Annette M. Montalvo
Annette M. Montalvo, CSR, RDR, CRR
Official Court Reporter